D. Maimon Kirschenbaum
Denise Schulman
JOSEPH, HERZFELD, HESTER &
KIRSCHENBAUM LLP
757 Third Avenue
25th Floor
New York, NY 10017
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Named Plaintiffs and the FLSA*
*Collective Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x

| | |
|---|---|
| **KEVIN KELLY, ALISON LOPEZ, MICHAEL SALAZAR, DENISE AMIRANTE and PETER ZIEGERHOFER, on behalf of themselves and other similarly situated,** | **INDEX NO: 08-CV-8708-CS** |
| | |
| **Plaintiffs,** | **JOINT STIPULATION OF** <u>**SETTLEMENT AND RELEASE**</u> |
| **v.** | |
| **BLT STEAK LLC and RITZ-CARLTON HOTEL COMPANY LLC, D/BA RITZ CARLTON WESTCHESTER** | |
| **Defendants.** | |

-------------------------------------------------------x

THE PARTIES STIPULATE AND AGREE as follows:

This Joint Stipulation of Settlement and Release ("Agreement") is entered into by and between plaintiffs Kevin Kelly, Alison Lopez, Michael Salazar, Denise Amirante and Peter Ziegerhofer ("Class Representatives" or "Plaintiffs") on behalf of themselves and all others similarly situated, on the one hand, and defendants BLT Steak LLC and Ritz-Carlton Hotel Company LLC, d/b/a Ritz Carlton Westchester ("Ritz-Carlton"), collectively "Defendants," on the other hand, by and through their respective counsel of record. This Agreement supersedes

any and all prior memoranda of understanding or proposals and accurately sets forth the Parties'
settlement in the amount of $330,000.00 to resolve all class, collective, and individual claims for
alleged violations of the federal Fair Labor Standards Act (29 U.S.C. §§ 201 *et seq.*) ("FLSA"),
the New York Labor Law, including §§ 193, 196-d, 198-b, and 650 et seq., and the New York
Codes, Rules and Regulations, including Title 12, as detailed below.

1.       On October 10, 2008, the Class Representatives filed a collective action and a
class action Complaint in the Southern District of New York, Case Number 08 CV 8708 (the
"Lawsuit"), captioned *Kevin Kelly, Alison Lopez, Michael Salazar, Denise Amirante and Peter
Ziegerhofer, on behalf of themselves and all others similarly situated v. BLT Steak LLC and Ritz-
Carlton Hotel Company LLC, d/b/a Ritz Carlton Westchester* alleging wage and hour violations
under the FLSA, the New York Labor Law and the New York Codes, Rules and Regulations.
Specifically, the Lawsuit alleged that Defendants: (a) improperly required employees to share
tips and gratuities with management and other non-tipped employees, (b) did not pay minimum
wage for all hours worked, (c) did not pay overtime for all hours worked in excess of forty (40)
per workweek, (d) did not pay a "spread of hours" premium, (e) did not pay employees a
minimum of three hours pay when they reported for work; and (f) did not pay employees for all
hours worked.  The Lawsuit seeks, among other things, recovery of unpaid wages, disgorgement
of tips, disgorgement of the tip credit, back pay, liquidated damages, penalties, interest, and
attorneys' fees and costs.

On January 30, 2009, Defendants responded to the Lawsuit and denied all of the
allegations of wrongdoing.

2.       For purposes of this Agreement, there shall be one "Settlement Class."  The
Settlement Class shall be defined as follows:

> "All hourly persons working in the classifications of Captain, Bartender, Runner/Server/Waiter, Barista or Banquet Server that were employed by the Ritz-Carlton Hotel Company LLC at the Ritz-Carlton Westchester hotel located in White Plains, NY at anytime between January 1, 2007 and January 31, 2010 that worked at the BLT Steak restaurant and/or banquets and/or special events at the hotel.

> The period specified above may be referred to as the "Class Period."

3.     For the purposes of settling the Lawsuit, the Parties stipulate and agree that the Lawsuit proceed as a collective action under 29 U.S.C. § 216(b).

4.     For the purposes of settling the Lawsuit, the Parties stipulate and agree that the requisites for establishing class certification with respect to the Settlement Class have been met, and therefore, stipulate and agree to class certification for settlement purposes.   More specifically, the Parties stipulate and agree that:

f)     The Settlement Class is so numerous as to make it impracticable to join all members of the Settlement Class ("Class Members");

f)     There is an ascertainable Settlement Class;

f)     Common questions of law and fact exist;

f)     Plaintiffs' claims are typical of the claims of the Class Members;

f)     D. Maimon Kirschenbaum, Esq. and Charles Joseph, Esq. of Joseph, Herzfeld, Hester & Kirschenbaum LLP, 757 Third Avenue, 25th Floor, New York, New York 10017 ("Class Counsel") has and will fairly and adequately protect the interests of the Class Members;

f)     The prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying adjudications which would establish incompatible standards of conduct; and

3

g.      Questions of law and fact common to the Class Members predominate over questions affecting individual Class Members and a class action is superior to other available means for the fair and efficient adjudication of the controversy.

However, if the Court does not grant final approval of the settlement, all stipulations and agreements contained in this paragraph regarding the prerequisites to class certification shall be void *ab initio* and Defendants expressly reserve the right to oppose class certification and/or that the Lawsuit proceed as a collective action.

5.      Beginning in or around February 2009, the Parties engaged in settlement discussions.  In order to facilitate meaningful settlement discussions, the Parties interviewed witnesses and exchanged and analyzed hundreds of documents pertinent to the claims in the Lawsuit.  On May 27, 2009, the Parties attended a full-day mediation with Ruth Raisfeld, an experienced employment-law mediator, and the mediation failed.   The Parties commenced formal discovery thereafter, while continuing to attempt to negotiate a resolution. On or about November 3, 2009, the Parties agreed to settle the Lawsuit, subject to approval and confirmation by the Court, in order to avoid further expenses, inconvenience and the burden of the litigation process.  The Parties now are entering into this Agreement to submit to the Court for preliminary and final approval.

6.      If, for any reason, the Court does not grant final approval of the settlement, any and all stipulations and agreements herein shall be void *ab initio*.  Defendants expressly reserve their right to oppose class certification and/or that the Lawsuit proceed as a collective action should the settlement not become final.  Neither this Agreement nor any ancillary documents, actions, statements or filings in furtherance of settlement shall be admissible or offered into evidence in the Lawsuit or any other action for any purpose whatsoever.

4

7.    Defendants deny any liability or wrongdoing of any kind whatsoever associated with the claims alleged in the Lawsuit, and further deny that, for any purpose other than settling the Lawsuit, this action is appropriate for class, collective or other representative treatment. Defendants deny, among other things, that they unlawfully denied the Class Members any tips or gratuities to which they were entitled, did not pay the Class Members for all hours worked, did not pay the Class Members the minimum wage for all hours worked, did not pay the Class Members overtime for all hours worked in excess of 40 per workweek, did not pay the Class Members a "spread of hours" premium for workdays in which they worked more than 10 hours and did not pay the Class Members a minimum of three hours pay when they reported for work. Defendants contend, among other things, that they have complied at all times with the Fair Labor Standards Act, the New York Labor Law and the New York Codes, Rules and Regulations. Plaintiffs, on the other hand, believe the Lawsuit is meritorious.

8.    Defendants are willing to enter into this settlement as a means to resolve fully all claims arising out of and related to the allegations in the Lawsuit, and all asserted and unasserted claims, that were alleged or could have been alleged, arising out of and related to the Fair Labor Standards Act, the New York Labor Law and the New York Codes, Rules and Regulations, and to avoid the further expense, inconvenience and burden of this litigation.

9.    Plaintiffs and Class Counsel have performed a thorough study of the law and facts relating to the claims asserted in the Lawsuit and have concluded, based upon their investigation and informal discovery, and taking into account the sharply contested issues, the expense and time necessary to pursue the Lawsuit through the appeal and further litigation, the risks and costs of further prosecution of the Lawsuit, the uncertainties of the appeal and complex litigation, and the substantial benefits to the Class Members, that a settlement with Defendants on the terms set

5

forth herein is fair, reasonable, adequate and in the best interests of the Class Members. Plaintiffs, on their own behalf and on behalf of each Class Member, have agreed to settle the Lawsuit on the terms set forth herein.

10.    In order to avoid further expenses, inconveniences and burdens, it is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims which exist between Defendants and the Class Members based on, arising out of, or directly or indirectly related to the claims and causes of action alleged in the Lawsuit, the Fair Labor Standards Act, the New York Labor Law and the New York Codes, Rules and Regulations, collectively referred to herein as the "Released Claims" and as defined in Paragraph 17 below. In order to achieve a full and complete release of Defendants (and the Releasees as defined in Paragraph 17 below) of such disputes, claims and causes of action, each Class Member (which includes any legal heirs and/or successors-in-interest of each Class Member), through execution of this Agreement by the Class Representatives, acknowledges that this Agreement is intended to include in its effect all claims and causes of action covered by the release applicable to the Class Members, all as more fully defined in Paragraph 17 below.

11.    The Parties agree to cooperate and take all necessary and appropriate steps to dismiss the Lawsuit with prejudice.

12.    The maximum total payment under the settlement, including all attorneys' fees and costs, the enhancement fees to the Class Representatives, interest and any other payments provided by this settlement (including the costs of administering the settlement), is $330,000.00. Defendants shall pay the employer portion of government-mandated withholdings, which amount shall not be included in, but will be in addition to, the maximum total payout.

## **TERMS OF SETTLEMENT**

13.    In consideration of the mutual covenants, promises and agreements set forth herein, the Parties agree, subject to the Court's approval, as follows:

a)    The Parties agree that the Lawsuit, and any claims, damages, liabilities or causes of action arising out of or related to the dispute, whether asserted or not, be settled and compromised as between the Class Members and Defendants, subject to the terms and conditions set forth in this Agreement and the approval of the Court.

b)    <u>Effective Date</u>:   The "Effective Date" is the date on which this Agreement becomes effective, which shall be 15 days following entry of a final order by the Court approving this Agreement if no objections are filed to the settlement.  If objections are filed and overruled, and no appeal is taken of the final approval order, then the Effective Date of final approval shall be 15 days after the appeal is withdrawn or after an appellate decision affirming the final approval decision becomes final.

c)    <u>Settlement Payment Date:</u>  Defendants shall provide all settlement checks to Class Counsel within 15 days after Class Counsel notifies Defendants of the amount of each settlement check.  However, in no event will Defendants be required to provide any settlement check to Class Counsel earlier than 15 days after the Effective Date.

d)    <u>Settlement Payments</u>:  The Net Settlement Amount ("NSA") shall be calculated by deducting from Defendants' maximum total payment of $330,000.00 the sums set forth below as the anticipated payments under this Agreement for attorneys' fees and past, present and future costs and the Class Representatives' Enhancement Fees (as set forth in subsection (v) below).

i.     Net Settlement Amount Payments:  The settlement payments to the Class Members who do not opt-out of the settlement ("Qualified Class Members") will be designated as payments for wages.

Class Counsel will handle the administration of the settlement, subject to oversight and spot-checks as deemed necessary by Defendants' Counsel.   All costs of administration of the settlement shall be paid by Class Counsel.  Duties of administration of the settlement shall include, without limitation, mailing notices, performing address updates and verifications as necessary prior to the first mailing, mailing deficiency letters (if any), performing one skip trace on any returned mail, and the calculation, processing, and mailing of all Class Member settlement checks.

The NSA Payments shall be calculated as follows:

Each Qualified Class Member will receive, subject to the terms and conditions of this Agreement, an Individual Settlement Amount (less applicable payroll deductions) for the hours that s/he worked for Ritz-Carlton during the Recovery Period (January 1, 2007 through May 31, 2009).

The Individual Settlement Amount shall be calculated in the following steps:

(1)     each employee will be classified by Class Counsel as either a (i) Captain (ii) Bartender (iii) Runner/Server/Waiter (iv) Barista or (v) Banquet Server, according to the last job held while employed by Ritz-Carlton;

(2)     each Captain and/or Bartender will receive 9 points for each hour that the employee recorded in the Defendants' records in the years from the beginning of the Class Period through December 31, 2008, and 3 points for each hour from January 1, 2009 through May 31, 2009;

(3)     each Runner and/or Server and/or Waiter will receive 6 points for each hour that the employee recorded in the Defendants' records in the years from the beginning of the Class Period through December 31, 2008, and 2 points for each hour from January 1, 2009 through May 31, 2009;

(4)     each Barista will receive 3 points for each hour that the employee recorded in the Defendants' records in the years from the beginning of the Class Period through December 31, 2008, and 1 point for each hour from January 1, 2009 through May 31, 2009;

(5)     each Banquet Server will receive 3 points for each hour that the employee recorded in the Defendants' records in the years from the beginning of the Class Period through October 31, 2008, and 1 point for each hour from November 1, 2008 through May 31, 2009;

(6)     the NSA shall be divided by the aggregate number of points accrued by all of the Class Members individually during the Recovery Period ("Point Value");

(7)     for each Qualified Class Member, the number of Points the Qualified Class Member accrued shall be multiplied by the Point Value; and

(8)     Defendants will then subtract applicable payroll deductions from such amounts.

In no event shall any Qualified Class Member receive a minimum gross Individual Settlement Amount of less than $50.00, less applicable payroll deductions.  To the extent necessary, the Net Settlement Amounts shall be reduced in order to ensure that each

Qualified Class Member receives at least the minimum Individual Settlement Amount of $50.00 before deductions.

Class Counsel will be responsible for mailing a check to each Qualified Class Member in the value of said Qualified Class Member's claim, less any applicable withholdings that are not to be borne by Defendants.  Defendants are not required under this settlement to make any further proceeds available from the NSA.

Defendants will deliver to Class Counsel the NSA Payments as set forth in Paragraph 13(c) above.

ii.    Allocation Of Net Settlement Amount Payments:   The Parties have determined that the NSA Payments will be treated as earnings subject to IRS Form W-2 reporting and, therefore, normal payroll taxes and withholdings will be deducted pursuant to state and federal law and Defendants will make all employer-required contributions.  Defendants shall be responsible for preparing all IRS Forms W-2, and, where applicable, IRS Forms 1099. Class Counsel shall be responsible for preparing all notices, mailings, claims and administration in accordance with this Agreement.  Class Counsel and Defendants' Counsel do not intend this Agreement to constitute legal advice.   To the extent that this Agreement, or any of its attachments, is interpreted to contain or constitute advice regarding any federal, state or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties.

iii.    Settlement Payments Do Not Trigger Additional Benefits:   All NSA payments to Qualified Class Members shall be deemed to be paid to such Qualified Class Members solely in the year in which such payments actually are received by the Qualified Class Members.  It is expressly understood and agreed that the receipt of such settlement payments will

not entitle any Qualified Class Member to additional compensation or benefits under any company bonus, contest, or other compensation or benefit plan or agreement in place during the period covered by the Agreement, nor will it entitle any Qualified Class Member to any increased retirement, 401(k) benefits or matching benefits, or deferred compensation benefits. It is the intent of this Agreement that the NSA payments provided for herein are the sole payments to be made to the Qualified Class Members, and that the Qualified Class Members are not entitled to any new or additional compensation or benefits as a result of having received the NSA payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the period covered by this Agreement).

   iv. <u>Attorneys' Fees and Costs</u>: Subject to Court approval and/or modification, Defendants further agree to pay attorneys' fees and past, present and future costs as set forth in Paragraph 15 below as part of Defendants' maximum payment amount.

   v. <u>Class Representative and Class Member Enhancement Fees</u>: Subject to Court approval, and as part of Defendants' maximum payment amount (as described in Paragraph 13(d) above), Defendants further agree to pay Class Representative Kevin Kelly an enhancement fee of $4,000, Peter Ziegerhoffer an enhancement fee of $3,000.00, and Class Representatives Denise Amirante, Michael Salazar, Alison Lopez and opt-in plaintiff David Noeth enhancement fees of $1,500.00 for their services as Class Representatives and Class Members (the "Enhancement Fees"). These payments are in addition to the claim share to which the Class Representatives are entitled along with other Qualified Class Members.

   vi. Defendants will issue IRS Forms 1099 for the Enhancement Fees to the Class Representatives and the Class Representatives will be responsible for correctly characterizing the payment for tax purposes and for paying any taxes due on the amounts

received.  The Class Representatives agree to pay all taxes due on the Enhancement Fees. Defendants will pay the Enhancement Fees on or before the dates set forth in Paragraph 13(c) above.

vii.    <u>Mailing Of Settlement Payments</u>:  Class Counsel shall cause the NSA payments and all Enhancement Fees to be mailed to the Qualified Class Members within 10 calendar days after Defendants deliver payment to Class Counsel.

viii.    Qualified Class Members will have 90 calendar days after mailing by the Class Counsel to cash their settlement payments.  If Qualified Class Members do not cash their settlement payment checks within the 90 day period, their settlement checks will be void and a stop-payment will be placed.  In such event, Defendants will wait another 275 days for the Class Member to request a replacement check.  All uncashed settlement payments shall be returned to Defendants.

e)    <u>Resolution of Disputes</u>:  In the event a Class Member disputes the number of hours worked for which he or she is entitled to receive credit under this Agreement, Class Counsel shall forward said dispute to Defendants' counsel, who will seek to resolve the dispute. Defendants' regularly maintained business records shall be deemed to control in the event of such a dispute. The Class Member must submit information or documents supporting his or her position 10 days before the fairness hearing is scheduled.  Information or documents submitted after 10 days will not be considered, unless otherwise agreed to by the Parties.  In no event shall any payment paid pursuant to a dispute resolution increase Defendants' maximum total payment, as set forth in Paragraph 13(d) above.

    f)      <u>Right to Rescission</u>:

        i.      If the total number of people opt-out of the Settlement Class exceeds 5% of the total number of Class Members, Defendants shall have the option, in their sole discretion, to rescind and void the settlement and this Agreement at any time prior to final approval by the Court by giving written notice to Class Counsel.

        ii.      In the event that the Court does not approve the settlement, and the basis for the Court's disapproval of the settlement does not involve a material term of this Agreement, the Parties shall make good faith efforts to modify this Agreement so as to gain the Court's approval.  In the event that the Court issues an order preliminarily or finally approving this Agreement in a form materially different from this Agreement, the Parties shall each have 10 days to withdraw from the settlement, which may be exercised immediately upon submission of written notice to the other Party and filing with the Court.  If either Party chooses to exercise the right to withdraw as set forth in this paragraph, the settlement shall be null and void for all purposes, and the Parties shall be restored, without prejudice, to their respective pre-settlement litigation positions.

<u>**CLAIMS ADMINISTRATION**</u>

14.    Class Counsel will send out to the Class Members a Notice of Proposed Settlement of Class Action Lawsuit ("Notice").  Defendants will issue NSA payments in accordance with this Agreement and deliver the NSA payments to Class Counsel.  Class Counsel will send out NSA payments to Qualified Class Members in accordance with this Agreement.  All disputes relating to Class Counsel's performance of its duties shall be referred to the Court, if necessary, which shall have continuing jurisdiction over the terms and conditions of this

13

Agreement until all payments and obligations contemplated by this Agreement have been fully carried out.

## ATTORNEYS' FEES AND COSTS

15.    Subject to paragraph 12 above, and in consideration for settling the Lawsuit and in exchange for the release of all claims by the Qualified Class Members, and subject to final approval and/or modification by the Court, Defendants agree not to oppose an award by the Court of Class Counsel attorneys' fees and costs (which includes all past, present and future costs and expenses incurred by Class Counsel in prosecuting Plaintiffs' claims in the Lawsuit) in the total amount of 30.00% of the maximum total payment (after deduction of costs, detailed below) under the settlement, or $99,000. The attorneys' fees are to compensate Class Counsel for all the work already performed in the Lawsuit, and all the work remaining to be performed in documenting the settlement, securing Court approval of the settlement, making sure the settlement is fairly administered and implemented, and obtaining dismissal with prejudice of the Lawsuit. The attorneys' fees and costs approved by the Court shall be paid to Class Counsel on or before the dates set forth in Paragraph 13(c) above. Defendants shall issue one (or more) IRS Form 1099(s) to Class Counsel reflecting the payment of such attorneys' fees and costs. Class Counsel agrees to provide Defendants with an IRS Form W-9 to facilitate such payment(s).

## NOTICE TO THE CLASS

16.    If the Notice is approved by the Court, it shall be sent by Class Counsel to the Class Members by first class mail. A copy of the Notice, with a proposed cover letter agreed upon by the Parties, is attached hereto as Exhibit A. A proposed cover letter to accompany the Notice is attached hereto as Exhibit B. Any returned envelopes from these mailings with

forwarding addresses will be utilized by Class Counsel to forward the Notice to the Class Members.

a. Within 10 days of the date that the Court grants preliminary approval of this Agreement, Defendants shall provide to Class Counsel a database, which will list each Class Member's name, last known address, and the number of hours each Class Member worked during each relevant period. Class Counsel agrees to use this data solely for the purposes of effectuating this settlement and will comply with all state and federal laws that protect the privacy of Ritz-Carlton's current and former employees. This database shall be based on Defendants' payroll and other business records. Class Counsel agrees to consult with Defendants prior to the production date to ensure that the format will be acceptable. Class Counsel will, if necessary, run a skip trace of the Class Members' addresses; this check will be performed only once per Class Member. Within 10 calendar days after the database is provided to Class Counsel, Class Counsel will mail the Notice to the Class Members.

b. Class Members may opt out of, or exclude themselves from, the Settlement Class under Federal Rule Civil Procedure 23 by mailing to the Class Counsel a written statement expressing their desire to be excluded from said class. The statement must include their name (and former name), current address, telephone number, and the dates of employment with Ritz-Carlton. Any such written exclusion must be post-marked not more than 45 calendar days after the date the Notice is mailed to the Class Members and a copy of all written exclusions must also be sent to Defendants' counsel. Written exclusions that do not include all required information, or that are not submitted on a timely basis, will be deemed null, void, and ineffective. Persons who are eligible to and do submit valid and timely exclusion statements will not participate in the settlement, nor will they be bound by the terms of the proposed settlement, if it is approved, or

the final judgment in this action. Any Class Member who fails to exclude him/herself from the settlement pursuant to this Paragraph will become a Plaintiff and designates the Class Representatives as their representative to make decisions on their behalf concerning their claims. Any Class Member who fails to exclude him/herself from the settlement will be deemed a participant whose rights and claims are determined by the terms of this Agreement, including the release provisions of the Agreement, as approved or modified by the Court. Class Members shall be permitted to rescind their exclusion statements in writing by submitting a rescission statement to Class Counsel and Defendants' Counsel not later than 1 business day prior to the Court's final approval hearing or as otherwise ordered by the Court.

      c.     Notices returned to Class Counsel as non-deliverable during the Forty-Five (45) day period for filing exclusion statements shall be re-sent within seven (7) days to the forwarding address, if any, on the returned envelope. Class Counsel will resend a returned Notice to a forwarding address only one time per Class Member. If there is no forwarding address, Class Counsel may do a computer search for a new address. This search will be performed only once per Class Member. (In connection with any such computer search and upon written request by Class Counsel, counsel for Defendants shall promptly provide Class Counsel with the social security number for such Class Member as maintained in Defendants' business records. Any such social security numbers shall: only be utilized by Class Counsel for purposes of conducting such computer address search; be kept confidential by Class Counsel; not be disclosed to Plaintiffs (or any other Settlement Class member); and shall be destroyed by Class Counsel promptly after being utilized to conduct such computer search.) Upon completion of these steps by Class Counsel, the Parties shall be deemed to have satisfied their obligation to provide the

Notice to that Class Member and the member shall be bound by all the terms of the Stipulation of Settlement and the Court's order and final judgment.

      d.      Class Members who wish to object to this settlement must do so in writing or appear in person at the final approval and fairness hearing.  Those who wish to object in writing must state the basis of the objection and mail the objection to Class Counsel and Defendants' Counsel postmarked on or before 45 calendar days after the date the Notice is mailed to the Class Members.  Class Members shall be permitted to withdraw their objections in writing by submitting a withdrawal statement to Class Counsel and Defendants' Counsel not later than 1 business day prior to the Court's final approval hearing, or otherwise ordered by the Court.

## RELEASE BY THE NAMED PLAINTIFFS AND THE CLASS

      17.      Upon the final approval by the Court of this Agreement, and except as to such rights or claims as may be created by this Agreement, each Qualified Class Member, on their behalf, and on behalf of their respective current, former and future heirs, spouses, executors, administrators, assigns, agents and attorneys, fully releases and discharges all Defendants and each of their present and former parent companies, hotel and property owners, subsidiaries, related or affiliated companies, shareholders, officers, directors, employees, members, managers, co-joint venture, employees, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity which could be jointly liable with any of them, ("Releasees") from any and all individual and class and collective claims, debts, losses, demands, obligations, liabilities, causes of action, charges, grievances, complaints or suits of any type or nature, whether known or unknown, contingent or non-contingent, which relate to the nonpayment or inaccurate payment of tips, gratuities and wages under any federal, state or

local law, including but not limited to New York and Federal law (29 U.S.C. § 201, *et. seq.,* New York Labor Law §§ 191,193, 196-d,198-b, 650, *et. seq,* 652, and 663 and relevant sections of N.Y.C.R.R.) and any other claims whatsoever alleged in, arising out of and related to the Lawsuit and all wage and hour or tip and gratuity claims which could have been alleged, including without limitation all claims for restitution and other equitable relief, liquidated damages, compensatory damages, punitive damages, wages, tips, penalties of any nature whatsoever, other compensation or benefits, including 401(k) benefits or matching benefits, retirement or deferred compensation benefits claims on account of unpaid wages, tips, overtime, and/or other compensation, attorneys' fees and costs, to the date of the Court's order granting final approval of this settlement, arising from the Class Members' employment by Defendants.

18.     The Defendants shall be entitled to insert language on the back of each check issued to Qualified Class Members that indicates that by depositing such checks, the Qualified Class Member agrees that s/he has consented to participate in the Lawsuit and has been paid in full for any and all FLSA and New York State Labor Law wage and hour and/or tips-related claims s/he may or might have had against Defendants.

## DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL

19.     The Parties shall promptly submit this Agreement to the Court together with Plaintiffs' motion for preliminary approval and determination by the Court as to its fairness, adequacy, and reasonableness.  Promptly upon execution of this Agreement, the Parties will in good faith stipulate to and seek dismissal of the Lawsuit filed by Plaintiffs in the Southern District of New York (Case No.: 08 CV 11155).  Class Counsel shall apply to the Court for the entry of an order substantially in the following form:

a.      Scheduling a final approval hearing on the question of whether the settlement, including payment of attorneys' fees and costs, and the Class Representatives' Enhancement Fees should be finally approved as fair, reasonable and adequate;

b.      Approving as to form and content the Notice;

c.      Directing the mailing of the Notice and providing the Class Members an opportunity to submit a request to be excluded from the settlement by first class mail to the Class Members;

d.      Preliminarily approving the settlement subject only to the objections of Class Members and final review by the Court;

e.      Preliminarily approving costs of administration; and

f.      Enjoining Plaintiffs and all Class Members from filing or prosecuting any claims, suits or administrative proceedings (including filing claims with the New York Department of Labor) regarding claims released by the settlement unless and until such Class Members have filed valid request for exclusion from the settlement form with the Claims Administrator and the time for filing claims with the Claims Administrator has elapsed.

## DUTIES OF THE PARTIES RELATING TO FINAL APPROVAL

20.     On or before 7 days prior to the final approval hearing, Class Counsel shall move the Court for final approval of the settlement provided for in this Agreement, together with a proposed final order agreed to by the Parties:

a.      Approving the settlement, adjudging the terms thereof to be fair, reasonable and adequate, and directing consummation of its terms and provisions;

b.      Approving Class Counsel's application for an award of attorneys' fees and reimbursement of costs;

c.    Approving the Enhancement Fees in accordance with this Agreement; and

d.    Dismissing this action on the merits with prejudice and permanently barring all members of the Qualified Settlement Class from prosecuting against Defendants and the Releasees, any individual or class claims that were or could have been asserted in the Lawsuit, including without limitation any claims arising out of the acts, facts, transactions, occurrences, representations, or omissions set forth in the Lawsuit; and, through the date of the final approval of this settlement upon satisfaction of all payments and obligations hereunder.

## PARTIES' AUTHORITY

21.    The signatories hereby represent that they are fully authorized to enter into this Agreement and bind the Parties to the terms and conditions herein.

## MUTUAL FULL COOPERATION

22.    The Parties agree to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and taking such other action as reasonably may be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Class Counsel shall, with the assistance and cooperation of Defendants and their counsel, take all necessary steps to secure the Court's final approval of this Agreement.

23.    Defendants and their counsel agree that they will not attempt to discourage Class Members from requesting to be excluded from this settlement. It is understood that Class Counsel may provide legal advice and counsel only to those Class Members who initiate and seek such advice from Class Counsel. Class Counsel will not initiate contact with Class

Members for purposes of encouraging Class Members to participate in this settlement or encouraging them to opt-out.

## NO PRIOR ASSIGNMENTS

24.     The Parties and their counsel represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber any person or entity any portion of any liability, claim, demand, action, cause of action or rights released and discharged herein.

## NO ADMISSION

25.     Nothing contained herein, nor the consummation of this Agreement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendants or any of the Releasees.  The Parties have entered into this Agreement solely with the intention to avoid further disputes and litigation with the attendant inconvenience and expense.

## NOTICES

26.     Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To Class Counsel:
D. Maimon Kirschenbaum
Charles Joseph
Joseph, Herzfeld, Hester & Kirschenbaum, LLP
757 Third Avenue, 25th Floor
New York, New York 10017

To Defendants' Counsel:
Michael Volpe
VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas, 25th Floor
New York, New York 10020

27.     All notices, demands or other communications by and between counsel for the Parties shall be in writing, transmitted via e-mail or facsimile, and shall be deemed to have been duly given as of the third business day after transmission.

## CONSTRUCTION

28.     The Parties agree that the terms and conditions of this Agreement are the result of arms-length negotiations between the Parties, and this Agreement shall not be construed in favor of or against any party by reason of the extent to which any party or his, her or its counsel participated in the drafting of this Agreement.

## CAPTIONS AND INTERPRETATIONS

29.     Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof.  Each term of this Agreement is contractual and not merely a recital.

## MODIFICATION

30.     This Agreement may not be changed, altered, or modified, except in writing and signed by the Parties, and approved by the Court.  This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

## INTEGRATION CLAUSE

31.     This Agreement contains the entire agreement between the Parties relating to the settlement and transaction contemplated hereby, and all prior or contemporaneous agreements,

understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are superseded by this Agreement. No rights hereunder may be waived except in writing. This is an integrated agreement.

## BINDING ON ASSIGNS

32.    This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

## SIGNATORIES

33.    It is agreed that because of the number of Qualified Class Members is so numerous, it is impossible or impractical to have each Qualified Class Member execute this Agreement. The Notice will advise all Class Members of the binding nature of the release, and the release shall have the same force and effect as if this Agreement were executed by each Qualified Class Member.

## STAY OF PROCEEDINGS

34.    Pending completion of the settlement process, the Parties agree to stay all proceedings in the Lawsuit, except such as are necessary to implement the settlement itself.

## COUNTERPARTS

35.    This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties.

**CLASS COUNSEL:**

DATED: January 21, 2010

JOSEPH, HERZFELD, HESTER &
KIRSCHENBAUM, LLP

By:     D. Maimon Kirschenbaum
          Charles E. Joseph

757 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 688-5640
Facsimile: (212) 307-5598

**DEFENDANTS' COUNSEL:**

DATED: January 21, 2010

VENABLE LLP

By:     Michael J. Volpe

Rockefeller Center
1270 Avenue of the Americas, 25th Floor
New York, New York 10020
Telephone: (212) 307-5500
Facsimile: (212) 307-5598

24