UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
KEVIN KELLY, ALISON LOPEZ,                          INDEX NO: 08-CV-8708-CS
MICHAEL SALAZAR, DENISE
AMIRANTE and PETER ZIEGERHOFER,
on behalf of themselves and other similarly
situated,

        Plaintiffs,

    v.

BLT STEAK LLC and RITZ-CARLTON
HOTEL COMPANY LLC, D/BA RITZ
CARLTON WESTCHESTER

        Defendants.
-----------------------------------------------------------x


<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT</u>

**TABLE OF CONTENTS**

I.     **INTRODUCTION**..........................................................................................................1

II.    **BACKGROUND** .........................................................................................................2

    A.   **Plaintiffs' Allegations**.......................................................................................2

    B.   **Defendants' Assertions** .....................................................................................2

    C.   **Discovery and Negotiations** ..............................................................................3

    D.   **Settlement Terms** ..............................................................................................3

    E.   **Release of Claims** .............................................................................................5

    F.   **Factors Considered In The Settlement Of The Claims** ...................................5

    G.   **Class Members' Response To Settlement** .........................................................6

III.   **ARGUMENT** .............................................................................................................6

    A.   **The Proposed Settlement Should Be Approved** ...............................................6

       i.   **The Proposed Settlement Class Satisfies the Requirements of Rule 23**..................6

          a.   **Plaintiffs Have Met All Of The Prerequisites Of Rule 23(a)** .............................7

             1)   **Numerosity Is Satisfied**.................................................................................7

             2)   **Commonality Is Satisfied** ..............................................................................7

             3)   **Typicality Is Satisfied** ...................................................................................8

             4)   **Adequacy Is Satisfied**....................................................................................8

          b.   **The Court Should Certify The Settlement Class Under Rule 23(b)(3)**...............8

       ii.   **Class Counsel Satisfy The Requirements Of Rule 23(g)** .........................................9

       iii.   **The Proposed Settlement Is Fair, Reasonable, And Adequate And Should Be Approved** ...................................................................................................................9

          a.   **Procedural Fairness** ...........................................................................................10

          b.   **Substantive Fairness** .........................................................................................10

1) The Complexity, Expense, And Likely Duration Of The Litigation .............. 11

2) The Reaction Of The Class To The Settlement ................................................ 11

3) The Stage Of The Proceedings And The Amount Of Discovery Completed . 12

4) The Risks Of Establishing Liability ................................................................ 12

5) The Risks of Establishing Damages ................................................................ 13

6) The Risks Of Maintaining The Class Action Through The Trial ................. 13

7) The Ability Of Defendants To Withstand A Greater Judgment ................... 14

8) The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And The Attendant Risks Of Litigation ................................. 14

iv.    The Notice To Class Members Meets The Requirements Of Rule 23 ............... 15

v.    Incentive Payments Should Be Awarded To The Named Class Representatives And One Additional Class Member ................................................................ 16

vi.    Class Counsel's Attorneys' Fees Should Be Approved ............................... 18

a.    Class Counsel's Requested Fee Award Is Reasonable .............................. 20

b.    The *Goldberger* Factors ............................................................................ 22

1) Counsel's Time And Labor ............................................................................ 22

2) The Litigation's Magnitude And Complexity .............................................. 23

3) The Risks Of Litigation ................................................................................ 23

4) Quality Of The Representation .................................................................... 24

5) The Fee Is Reasonable In Relation To The Settlement ............................... 24

6) Public Policy Considerations ....................................................................... 25

IV.    CONCLUSION ................................................................................................. 25

I.     **INTRODUCTION**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23") and Section 216(b) of the Fair Labor Standards Act ("FLSA"), Plaintiffs Kevin Kelly, Allison Lopez, Michael Salazar, Denise Amirante, and Peter Ziegerhoffer, (collectively, "Plaintiffs" or "Class Representatives"), individually and on behalf of the class they represent, apply to this Court for final approval of a proposed settlement in this wage and hour class and collective action. This action was brought on behalf of certain employees of Defendants BLT Steak LLC and Ritz-Carlton Hotel Company LLC, d/b/a Ritz Carlton Westchester (collectively, "Defendants"). This settlement will resolve all claims brought before this Court in this action pursuant to the proposed compromise set forth in the Joint Stipulation of Settlement and Release ("Agreement" or "Settlement Agreement").[1] The Settlement Class is defined as, "All hourly persons working in the classifications of Captain, Bartender, Runner/Server/Waiter, Barista, or Banquet Server that were employed by the Ritz-Carlton Hotel Company LLC at the Ritz-Carlton Westchester Hotel located in White Plains, NY at anytime between January 1, 2007 and January 31, 2010 that worked at the BLT Steak restaurant and/or banquets and/or special events at the hotel."

On February 8, 2010, the Court preliminarily approved the proposed settlement as being fair, just, reasonable, and in the best interests of the Settlement Class. In so approving, the Court preliminarily certified the Settlement Class and found that for purposes of the settlement the Settlement Class met the requirements for class certification under Federal Rule of Civil Procedure 23 ("Rule 23"). The Court also found that the Settlement Notice proposed in the Agreement constituted valid, due, and sufficient notice to Class Members.

Pursuant to the February 8, 2010, Court Order, proposed class counsel ("Class Counsel") mailed the Settlement Notice. Kirschenbaum Decl. ¶ 6. Class Members had 45 days from the

---

[1] The Settlement Agreement is attached hereto as Exhibit A.

mailing of Notice to opt out of the state claim class action and object to the terms of the Agreement.

## II.   **BACKGROUND**

### A.   **Plaintiffs' Allegations**

Plaintiffs filed this action against Defendants on October 10, 2008, on behalf of themselves and others similarly situated alleging wage and hour violations under the Fair Labor Standards Act ("FLSA") and New York Labor Law.  Specifically, they alleged, *inter alia*, that Defendants illegally (1) failed to pay them and other employees for all hours worked, including overtime hours, 29 U.S.C. § 207, N.Y. Lab. Law § 652; N.Y. Comp. Codes R. & Regs. tit. 12, §§ 137-1.2, 137-1.3, 137-1.5; (2) failed to pay them and other employees a "spread of hours" premium when the length of their workdays exceeded ten (10) hours, N.Y. Comp. Codes R. & Regs. tit. 12, § 137-3.11; (3) improperly required them and other employees to share tips with managers and non-service employees, thereby forfeiting the federal "tip credit" for minimum wage and violating the New York Labor Law, 29 U.S.C. § 203(m); N.Y. Lab. Law § 196-d; *Ayres v. 127 Rest. Corp.*, 12 F. Supp. 2d 305, 308 (S.D.N.Y. 1998); *Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002); and (4) failed to distribute fixed gratuities charged to banquet customers in full to service employees, N.Y. Lab. Law § 196-d; *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008).

The Complaint seeks as Class relief the difference between Class Members' actual wages and the minimum wage, tip money illegally retained by Defendants, and unpaid minimum wage, spread of hours, and overtime compensation.  The Complaint also seeks liquidated damages under the FLSA, interest, and all costs and attorneys' fees incurred in this Litigation.

### B.   **Defendants' Assertions**

Defendants have consistently denied all claims in Plaintiffs' complaint.  They maintain that they paid Class Members for all hours worked and in accordance with federal and state wage and hour laws and did not withhold any gratuities to which Class Members were legally entitled.

### C.  Discovery and Negotiations

Counsel for the Parties engaged in negotiations and held a voluntary mediation in May 2009 with Ruth Raisfeld, an experienced wage and hour mediator.  Prior to the mediation, the Parties informally exchanged information and documents that they agreed were relevant to settlement discussions.  Class Counsel reviewed these documents with the Plaintiffs to determine the extent of Defendants' liability and damages and prepared their legal and factual positions in advance of the mediation.  However, the Parties were unable to reach a resolution at the full-day mediation.  Kirschenbaum Decl. ¶ 4.

The Parties then continued to negotiate directly and with the assistance of Ms. Raisfeld, and they exchanged discovery requests.  After months of negotiations, the Parties ultimately reached a settlement in November 2009.  *Id.*at ¶ 5.

### D.  Settlement Terms

The Settlement Agreement provides that Defendants shall pay a total Gross Fund Value ("GFV") of three hundred and thirty thousand dollars ($330,000.00).  The GFV includes attorneys' fees, costs, taxes, and any incentive awards.

After the payment, subject to the Court's approval, of $99,000 in attorneys' fees and costs and a total of $13,000 in small individual enhancement awards and incentive payments to eight Plaintiffs, the remaining amount ("Net Settlement Amount" or "NSA") shall be distributed among Class Members that do not opt out of the litigation ("Settlement Class Members") on a

pro-rata basis determined by how many workweeks each Class Member worked for Defendants during the Class Period.  Defendants will withhold relevant taxes from these payments.

Due to the structuring of Defendants' tip pool, employees in certain positions lost more tips than others.  For example, the tip pool structure was such that bartenders received more points (or a greater percentage of the tip pool) than waiters.  Therefore, money misappropriated from the tip pool had a greater impact on bartenders than waiters.  The settlement has been structured to reflect these differences, and individual settlement amounts will be calculated as follows: (a) Each employee will be classified by Class Counsel as either a "captain," "bartender," "runner/server/waiter," "barista," or "banquet server," according to the last job held while employed by Defendants.  (b) Each captain and/or bartender will receive nine (9) points for each hour that the employee recorded in Defendants' records in the years from the beginning of the Class Period Period through December 31, 2008, and three (3) points for each hour from January 1, 2009 through May 31, 2009.  (c) Each runner and/or server and/or waiter will receive six (6) points for each hour that the employee recorded in Defendants' records in the years from the beginning of the Class Period through December 31, 2008, and two (2) points for each hour from January 1, 2009 through May 31, 2009.  (d) Each barista will receive three (3) points for each hour that the employee recorded in Defendants' records in the years from the beginning of the Class Period through December 31, 2008, and one (1) points for each hour from January 1, 2009 through May 31, 2009.  (e) Each banquet server will receive three (3) points for each hours that the employee recorded in Defendants' records in the years from the beginning of the Class Period through October 31, 2008, and one (1) point for each hour from November 1, 2008 through May 31, 2009.  (f) The NSA shall be divided by the aggregate number of points accrued by all of the Class Members individually during the Recovery Period ("Point Value").  (g) For

each Class Member who does not opt out of the settlement, the number of points he or she accrued will be multiplied by the Point Value.  (h) Defendants will then subtract applicable payroll deductions.

In no event shall any Class Member who does not opt out of the settlement receive a minimum gross individual settlement amount of less than $50.00.  To the extent necessary, the net settlement amounts shall be reduced in order to ensure that each Class Member who does not opt out of the settlement receives at least $50.00.

### E.  Release of Claims

In return for the above consideration, Settlement Class Members will release all "Released Claims" (as defined in the Settlement Agreement) against each and all of the Defendants and related entities.  In general, Settlement Class Members will release all wage and hour claims under state and federal law.  Settlement Class Members will retain claims unrelated to their wage and hour claims.

### F.  Factors Considered In The Settlement Of The Claims

The Plaintiffs weighed the weaknesses and complexities in their case against the benefit of receiving a large percentage of the damages sought without the risks of litigation.  Throughout the litigation, Defendants denied all liability or wrongdoing with respect to Plaintiffs' claims.

Plaintiffs have thoroughly analyzed Defendants' factual and legal defenses, examined documents and other information produced by Defendants, reviewed the defenses and documents with Plaintiffs and other Class Members, and assessed the strength of Defendants' arguments.

Additionally, in considering the possibility of settlement, Plaintiffs and Class Counsel accounted for the time, delay, and costs of further discovery motion practice, liability trial(s),

damages trial(s), and appeal(s).  Both Parties also took into account that if Plaintiffs prevailed at trial, Defendants would be liable for their attorneys' fees.

### G. **Class Members' Response To Settlement**

The response to the settlement has been extremely positive.  Counsel sent out 124 notices.  Kirschenbaum Decl. ¶ 6.  No Class Member objected to or opted out of the settlement.[2]  *Id*. at ¶ 7.  Thus, there was clear approval of the settlement.

### III.    **ARGUMENT**

### A. **The Proposed Settlement Should Be Approved**

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class basis: "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  *See also D'Amato v. Watman*, 236 F.3d 78, 85 (2d Cir. 2001).

Approval of a class action settlement is within the Court's discretion, "which should be exercised in light of the general judicial policy favoring settlement."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (internal quotation omitted).  "The Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case."  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (1974).

### i. **The Proposed Settlement Class Satisfies the Requirements of Rule 23**

Prior to granting final approval of a settlement, a district court determines whether a proposed settlement class should be certified under Rule 23.  *In re Telik, Inc. Sec. Litig*, 576 F. Supp. 2d at 581-82.  Under Rule 23, a class may be certified if there is (1) numerosity, (2)

---

[2] Two of Defendants' managers received the Notice and submitted opt-out forms after being advised by Class Counsel that they were improperly included on the initial list of Class Members.  Kirschenbaum Decl. ¶ 7 n.1.

commonality, (3) typicality, and (4) adequacy, and where one of the Rule 23(b) requirements is met.[3] *Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 2007, at *8 (S.D.N.Y. Jan. 31, 2007). Here, the proposed class meets the numerosity, commonality, typicality, and adequacy standards, as well as Rule 23(b)(3)'s requirement that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### a. Plaintiffs Have Met All Of The Prerequisites Of Rule 23(a)

#### 1) Numerosity Is Satisfied

Numerosity is presumed where there are at least 40 class members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). The Class in this case includes over 100 people and is thus so numerous that joinder of all Class Members is impracticable.

#### 2) Commonality Is Satisfied

"The commonality requirement will be met if the named plaintiffs share a common question of law or fact with the grievances of the prospective class." *Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001). Here, the claims of Plaintiffs and the Class all revolve around the same questions of law and fact regarding whether (1) Defendants employed Plaintiffs and Class Members under federal and New York law; (2) Defendants maintained accurate time records; (3) Defendants properly compensated Class Members for all hours worked; and (4) Defendants or their agents unlawfully retained portions of Class Members' tips. Since Plaintiffs challenge common practices and procedures at Defendants' restaurant to which they allege all Class Members were subject, the commonality requirement is easily satisfied.

---

[3] Rule 23(a) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

### 3) Typicality Is Satisfied

The typicality requirement is satisfied here because the Class Representatives' claims "arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Taft*, 2007 U.S. Dist. LEXIS 9144, at *10. Moreover, the claims of the Class Representatives and the proposed Class Members rely on "similar legal arguments" that Defendants failed to compensate them properly. *Robinson v. Metro N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001).

### 4) Adequacy Is Satisfied

Adequacy is satisfied where "the proposed class representative [has] an interest in vigorously pursuing the claims of the class, and [has] no interests antagonistic to the interests of the other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).

Here, Plaintiffs are adequate representatives of the proposed class and have fairly and adequately represented and protected the interests of all Settlement Class Members in achieving this settlement. They have vigorously prosecuted this action and have no known conflicts with any Settlement Class Members. Kirschenbaum Decl. ¶ 10. Accordingly, the Class Representatives meet the adequacy requirement of Rule 23.

### b. The Court Should Certify The Settlement Class Under Rule 23(b)(3)

Certification is appropriate because, as set forth above, Plaintiffs have satisfied the predominance and superiority requirements of Rule 23(b)(3). The above-described common questions of law and fact predominate over any individual issues such as the nature and extent of damages. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001).

Additionally, a class action is superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all Settlement Class Members is

impracticable.  Moreover, as damages suffered by individual members of the Settlement Class are relatively small compared to the expense and burden of individual litigation, it would be exceedingly difficult for all Settlement Class Members to individually redress the harm done to them.  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 183-84 (W.D.N.Y. 2005); *Taft*, 2007 U.S. Dist. LEXIS 9144, at *12; *Ansoumana*, 201 F.R.D. at 89.

### ii.  Class Counsel Satisfy The Requirements Of Rule 23(g)

With respect to appointment of class counsel, Rule 23(g) requires that an attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class and that in appointing class counsel, the Court must consider the following: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class[.]"  Fed. R. Civ. P. 23(g)(1)(A).

Class Counsel Joseph, Herzfeld, Hester & Kirschenbaum LLP ("JHHK") are highly experienced in complex wage and hour litigation.  Kirschenbaum Decl. ¶¶ 11-22.  They have served as lead counsel on many local and national class and collective actions under the FLSA and state wage and hour laws.  *Id.* at ¶ 17.  JHHK have brought numerous New York class actions on behalf of food service employees in which they obtained significant monetary awards for class members.  *Id.* at ¶¶ 15, 17-19.  JHHK conducted a thorough pre-filing and continuing investigation, vigorously prosecuted the lawsuit, and negotiated a settlement that provides prompt and valuable relief to Class Members.  They also committed all necessary resources to prosecuting this action and representing the Class.  Accordingly, Rule 23(g) is satisfied.

### iii.  The Proposed Settlement Is Fair, Reasonable, And Adequate And Should Be Approved

In deciding whether to approve a settlement, courts consider the fairness of the settlement by looking at the negotiating process that lead to the settlement and the substantive terms of the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

### a.  Procedural Fairness

A presumption of fairness arises where a settlement was "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (internal quotation omitted).  Relevant factors include "[t]he experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves[.]" *Hicks v. Morgan Stanley & Co.*, No. 01-Civ-10071, 2005 U.S. Dist. LEXIS 24890, at *13 (S.D.N.Y. Oct. 19, 2005) (internal quotation omitted).

Here, as discussed in Section III.A.ii, Class Counsel are highly experienced in litigation complex wage and hour class and collective actions.  As the Parties engaged in extensive, arm's length negotiations with the help of an impartial, experienced wage and hour mediator, the settlement is entitled to a presumption of fairness and adequacy. *In re Priceline.com, Inc.*, No. 00 Civ. 1884, 2007 U.S. Dist. LEXIS 52538, at *9 (D. Conn. July 19, 2007).

### b.  Substantive Fairness

Courts in this Circuit review a proposed settlement agreement for substantive fairness according to the factors set forth in *City of Detroit v. Grinnell Corp.*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery;

[and] (9) the range of reasonableness of the settlement fund to a possible recovery
in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 117.  These factors

ought not be applied in a formulaic manner.  Rather, "[t]he evaluation of a proposed settlement

requires an amalgam of delicate balancing, gross approximations and rough justice." *Grinnell*

*Corp.*, 495 F.2d at 468 (citing *Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972)).

### 1)   The Complexity, Expense, And Likely Duration Of The Litigation

To assess the substantive fairness of a settlement, courts weigh the benefits of a potential

settlement against the time and expense of continued litigation.  *Maley v. Del Global Tech.*

*Corp.*, 186 F. Supp. 2d 358, 361-62 (S.D.N.Y. 2002).  "[M]ost class actions are inherently

complex and settlement avoids the costs, delays and multitude of other problems associated with

them." *Frank*, 228 F.R.D. at 184-85 (internal quotation omitted).  If this case continues, there

will be significant costs that will deplete any recovery, including numerous depositions, further

document production and review, trial, and possible appeals.  Moreover, there is likely to be

significant motion practice.  For example, Plaintiffs will move for class certification under Rule

23, which Defendants are likely to oppose, and the parties will presumably move for summary

judgment to narrow the issues.  This will result in significant costs and delay in the resolution of

this case. *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05-Civ-3452, 2008 U.S. Dist. LEXIS 23006,

at *10 (S.D.N.Y. Mar. 24, 2008).

### 2)   The Reaction Of The Class To The Settlement

In evaluating the degree of class members' support for a settlement, courts look to the

proportion of the class that object to and opt out of the settlement.  Where relatively few class

members opt-out or object to the settlement, the lack of opposition supports court approval of the

settlement.  *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-Civ-5173,

2008 U.S. Dist. LEXIS 36093, at *18 (S.D.N.Y. May 1, 2008).

This factor weighs heavily in favor of approving the proposed settlement.  Class Counsel

mailed 124 notices.  No Class Member objected to or opted out of the settlement.  Kirschenbaum

Decl. ¶ 7.  Therefore, Class Members' satisfaction with the settlement is clear.

### 3)  The Stage Of The Proceedings And The Amount Of Discovery Completed

Courts also consider how far the litigation has progressed and the amount of discovery

completed to gauge whether the parties are sufficiently informed to enter into a fair and adequate

settlement.  *Velez v. Roche*, No. 02-Civ-0337, 2007 U.S. Dist. LEXIS 46223, at *18 (N.D. Cal.

June 30, 2004).  Parties need not have engaged in extensive discovery for a settlement to be

approved.  *Maley*, 186 F. Supp. 2d at 363.  Instead, courts look at whether "the parties conducted

sufficient discovery to understand their claims and negotiate settlement terms."  *In re Sony SXRD*

*Rear Projection Television Class Action Litig.*, 2008 U.S. Dist. LEXIS 36093, at *20.

Class Counsel entered into the proposed Settlement Agreement with a thorough

understanding of their case.  As set forth above, Defendants provided Plaintiffs with extensive

documents, which Class Counsel reviewed with Plaintiffs and discussed with Defendants'

counsel.  Consequently, Class Counsel were able to properly evaluate the strengths and

weaknesses of the claims and defenses and obtain an excellent result for Class Members.

### 4)  The Risks Of Establishing Liability

In evaluating the risks of establishing liability, a court must "assess the risks of litigation

against the certainty of recovery offered by the Settlement."  *In re Telik, Inc. Sec. Litig.*, 576 F.

Supp. 2d at 579.  Courts recognize that regardless of the perceived strength of a plaintiff's case,

liability is "no sure thing[.]"  *Wal-Mart Stores, Inc.*, 396 F.3d at 118 (internal quotation omitted).

As discussed above, Defendants asserted legal and factual defenses to the underlying claims in this lawsuit.  There are numerous disputed issues of fact, such as whether Defendants paid employees for all hours worked, that make establishing liability risky for Plaintiffs.  In addition, juries are unpredictable.  The proposed Settlement is therefore preferable to costly, protracted litigation, which may result in a smaller per-plaintiff recovery.

### 5)   The Risks of Establishing Damages

Courts also consider the risks of establishing damages.  Regardless of plaintiffs' ability to establish liability, they still face "substantial risks in proving its damages at trial." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 128 (S.D.N.Y. 1997); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 119.

Plaintiffs may have difficulty establishing the full extent of class-wide damages at trial. Some of Plaintiffs' claims are not reflected in Defendants' records and would have to be established through testimony and reference to other documents.  Therefore, the value of Plaintiffs' claims could be significantly impacted by the jury's assessment of Plaintiffs' credibility and/or the reasonableness of Defendants' explanations.  Moreover, "damages are a matter for the jury, whose determinations can never be predicted with certainty." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. at 128; *Maley*, 186 F. Supp. 2d at 365 (recognizing that a jury may award plaintiffs only a fraction of their alleged damages).

### 6)   The Risks Of Maintaining The Class Action Through The Trial

The next *Grinnell* factor is the risk of maintaining the class action through trial. Specifically, courts consider whether a class is already certified, whether plaintiffs will move for class certification, whether defendants will oppose certification, and whether the class could be decertified.  *D.S. v. N.Y. City Dep't of Educ.*, No. 05-Civ-4787, 2008 U.S. Dist. LEXIS 96034, at

*52 (E.D.N.Y. Nov. 25, 2008); *Glover v. Crestwood Lake Section I Holding Corp.*, No. 89-Civ-5386, 1991 U.S. Dist. LEXIS 4995, at *17-18 (S.D.N.Y. Apr. 10, 1991).  Courts also consider the "pressure of active adversarial proceedings on named plaintiffs" and its potential effect on their ability to represent the class.  *Glover*, 1991 U.S. Dist. LEXIS 4995, at *18.

If the proposed Settlement Agreement is not approved, Plaintiffs will move for class certification of the state claims.  This motion will be time-consuming and costly, and Defendants will likely oppose it.  Although Plaintiffs believe that the Court would approve class certification, there is a possibility that certification would not be granted or that the class would later be decertified.

### 7) The Ability Of Defendants To Withstand A Greater Judgment

Next, courts consider a defendant's ability to withstand a judgment greater than the settlement.  *D.S.*, 2008 U.S. Dist. LEXIS 96084, at *57.  Nevertheless, the fact that a defendant can withstand a greater judgment does not preclude a finding that the settlement was fair, reasonable, and adequate.  *Id.*  Plaintiffs are not fully aware of Defendants' financial condition.  However, Plaintiffs recognize that the restaurant industry is generally a low-margin industry, especially in light of current economic conditions, and that a payout of this size is significant to Defendants.

### 8) The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And The Attendant Risks Of Litigation

The final two *Grinnell* factors can be considered together.  *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 U.S. Dist. LEXIS 36093, at *24.  "The most important factor in the court's assessment of the proposed settlement is the 'strength of the case for plaintiffs on the merits, balanced against the [relief] offered in settlement.'"  *D.S.*, 2008 U.S.

14

Dist. LEXIS 96034, at *53 (quoting *Grinnell*, 495 F.2d at 455). The determination of the "'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint as well as the ability of Defendants to pay the judgment." *Maley*, 186 F. Supp. 2d at 365.

These factors weigh heavily in favor of approval of the Settlement. "The determination whether a settlement is reasonable does not involve the use of a mathematical equation yielding a particularized sum. Instead, there is a range of reasonableness with regard to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank*, 228 F.R.D. at 186 (internal quotations and citations omitted).

As discussed above, Plaintiffs face substantial risks in proving and collecting their best possible recovery. The Settlement also provides the significant benefit of an immediate and substantial payment to Class Members, rather than "speculative payment of a hypothetically larger amount years down the road." *Teachers' Ret. Sys. v. A.C.L.N. Ltd.*, No. 01-Civ-11814, 2004 U.S. Dist. LEXIS 8608, at *16 (S.D.N.Y. May 14, 2004). The Settlement amount of $330,000 allows Class Members to recover over two-thirds of their best possible recovery.

### iv. The Notice To Class Members Meets The Requirements Of Rule 23

When a court certifies a class under Rule 23(b)(3),

> the court must direct to class numbers the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language:
> - the nature of the action,
> - the definition of the class certified,
> - the class claims, issues, or defenses,
> - that a class member may enter an appearance through counsel if the member so desires,

- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
- the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).  Under Rule 23(c)(2)(B), "the settlement notice must fairly apprise the prospective members  of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc.*, 396 F.3d at 114 (internal quotation omitted).

Class Counsel mailed Class Notice via first class mail to all Class Members at their last known addresses as maintained by Defendants.[4]  Kirschenbaum Decl. ¶ 6.  For each Class Notice returned to Class Counsel as undeliverable, Class Counsel attempted a skip trace and sent an additional copy of the Class Notice to individuals who were located using the skip trace.  *Id.*

The Class Notice plainly and concisely provided the necessary information regarding the lawsuit and class certification pursuant to Rule 23(c)(2)(B).  The Notice described (1) the terms of the settlement; (2) each Class Member's recovery; (3) the relief available to Class Members; (4) the date, time, and place of the Fairness Hearing; (5) the procedures for objecting to the settlement and appearing at the Fairness Hearing; (6) the incentive awards sought; (7) the attorneys' fees sought; and (8) contact information for Class Counsel and Defense Counsel.

### v.  Incentive Payments Should Be Awarded To The Named Class Representatives And One Additional Class Member

Under the proposed Settlement Agreement, and subject to the Court's approval, separate payments are to be awarded of $4,000 to Class Representative Kevin Kelly, $3,000 to Class Representative Peter Ziegerhoffer, and $1,500 each to Class Representatives Denise Amirante, Michael Salazar, and Alison Lopez and to opt-in Plaintiff David Noeth.

---

[4] The Notice is attached hereto as Exhibit B.

A court may grant incentive awards in a class action.  In doing so, a court will consider

> [t]he existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the clam, and of course, the ultimate recovery.

*Frank*, 228 F.R.D. at 187 (internal quotation omitted).  Incentive "awards are particularly appropriate in the employment context. . . . [where] the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers." *Id.*; *see also Velez*, 2007 U.S. Dist. LEXIS 46223, at *23.

The Class Representatives and Mr. Noeth all expended considerable time and effort to assist Class Counsel with the case.  They were instrumental to the initiation and investigation of the case.  They each reviewed documents, explained the relevant and necessary factual information to Class Counsel, and evaluated Defendants' defenses.  Kirschenbaum Decl. ¶ 8. The Class Representatives all participated in responding to Defendants' discovery requests, and Plaintiffs Kelly and Ziegerhoffer attended the full-day mediation in May 2010.  *Id.*  Plaintiff Kelly in particular played a crucial role in obtaining an excellent result for the Class, spending hours with Class Counsel reviewing voluminous documents produced both by Defendants and by him, and has provided invaluable assistance in the administration of the settlement by reviewing and correcting information produced by Defendants regarding Class Members' positions and hours worked.  *Id.*  Thanks to these six individuals, important evidence and new opt-in members for the class action were acquired.

The enhancement payments totaling $13,000 for six plaintiffs are modest in comparison with those approved by other courts, and they represent approximately 3.94% of the Settlement Fund.[5]  Because of their time, assistance, development of the case, and subject to – at the very least – fear of retaliation, the payments to the Class Representatives and Mr. Noeth are appropriate and justified as part of the overall Settlement.  *Id.* at ¶ 9.

### vi.  Class Counsel's Attorneys' Fees Should Be Approved

Under the Settlement Agreement, Class Counsel may receive 30% of the Settlement Amount, or $99,000, as attorneys' fees.  Although the engagement agreements signed by the Class Representatives provide for attorneys' fees of one-third of any recovery, which is the norm in this type of class action litigation, Class Counsel agreed to seek this reduced fee in order to achieve a beneficial settlement for the Class.  Class Counsel Class Counsel will use the attorneys' fees to cover costs and expenses incurred in the case.

It is well established that "attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 585 (internal quotation omitted).  "Fees and expenses are paid from the common fund so that all class members contribute equally towards the costs associated with litigation pursued on their behalf."  *Id.*  The award of attorneys' fees has the three-fold benefit of (1) "providing just compensation," (2) "encourag[ing] skilled counsel to

---

[5] *See, e.g.*, *Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *8, 14-15 (awarding incentive payments totaling 3.67% of $450,000 settlement); *Salus v. Tse Group, LLC*, No. 07-Civ-03142 (S.D.N.Y. April 3, 2008) (approving incentive payments totaling 5.6% of $375,000 settlement for four plaintiffs); *Ganzero v. Bensusan Rest. Group*, No. 07-Civ-05940 (S.D.N.Y. Feb. 25, 2009) (approving incentive awards totaling 4.69% of $64,000 settlement to four plaintiffs); *Frank*, 228 F.R.D.at 187-88 (awarding an incentive payment of 8.42% of $125,000 settlement to one individual); *RMED Int'l v. Sloan's Supermarkets*, No. 94-Civ-5587, 2003 U.S. Dist. LEXIS 8239, at *7 (S.D.N.Y. May 15, 2003) (approving an incentive award of 2.56% of $975,000 settlement for a single named plaintiff); *Sheppard v. Consol. Edison Co. of N.Y., Inc.*, No. 94-Civ-0403, 2002 U.S. Dist. LEXIS 16314, at *20 (E.D.N.Y. Aug. 1, 2002) (approving total incentive award 2.65% of $4,500,000 settlement for six named plaintiffs).

represent those who seek redress for damages inflicted on entire classes of persons," and (3) "discourag[ing] future misconduct of a similar nature." *Id.*

The Second Circuit permits a district court to calculate reasonable attorneys' fees by either the lodestar or percentage method. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Under the lodestar method, "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Id.* at 47. Once that calculation is complete, the district court has discretion to "increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." *Id.*

Under the percentage method, the district court "sets some percentage of the recovery as a fee. In determining what percentage to award, courts look to the same 'less objective' factors that are used to determine the multiplier for the lodestar." *Id.* (internal citation omitted). Under either method, the fee must be "reasonable," and "[w]hat constitutes a reasonable fee is properly committed to the sound discretion of the district court." *Id.*

Although both the lodestar and percentage methods are permissible,

> [t]he trend in the Second Circuit recently has been to use the percentage method. The percentage method, though not without flaws, is often preferable to the lodestar method to determine attorneys' fees in class actions because it reduces the incentive for counsel to drag the case out to increase the number of hours billed; also, fewer judicial resources will be spent in evaluating the fairness of the fee petition.

*Hicks*, 2005 U.S. Dist. LEXIS 24890, at *22-23 (internal citation omitted); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 122; *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 586. Moreover, "the percentage method is consistent with and, indeed, is intended to mirror, practice in the private

marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003).

Nevertheless, even where the percentage method is used, "the lodestar remains useful as a baseline[,]" and the Second Circuit "encourage[s] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50; *EVCI Career Coll. Holding Corp. Sec. Litig.*, No. 05-Civ-10240, 2007 U.S. Dist. LEXIS 57918, at *53 (S.D.N.Y. Feb. 16, 2007).

### a.  Class Counsel's Requested Fee Award Is Reasonable

Pursuant to the proposed Settlement Agreement, Class Counsel seeks an award of 30% – or $99,000 – for attorneys' fees and costs.  This is lower than the 33.33% fee agreed to in the engagement agreements signed by the Class Representatives.  *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) (recognizing that the fee agreed upon by lead plaintiffs may "offer the best indication of a market rate").  Class Counsel will pay all incurred costs and expenses from the portion of the fund that it is awarded, and thus will not be seeking a separate award for costs.  The percentage of the fund sought is consistent with the norms of class litigation in this circuit.  *See, e.g., Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 249 (2d Cir. 2007) (affirming award of attorneys' fees and costs equal to 30% of a $42.5 million settlement fund); *Warren v. Xerox Corp.*, 2008 U.S. Dist. LEXIS 73951, at *22  (E.D.N.Y. Sept. 19, 2008) (awarding 33.33% of a $12 million settlement fund for fees and costs); *Frank*, 228 F.R.D. at 189 (awarding 40% of a $125,000 settlement fund for fees, costs, and expenses); *Maley*, 186 F. Supp. 2d at 370, 374

(awarding fees of 33.33% of the $11.5 million settlement fund and recognizing that courts in the Second Circuit have awarded fees as large as 50% of a settlement fund).[6]

In order to prevent plaintiffs' attorneys from receiving a windfall, "[a]s the size of the settlement fund increases, the percentage of the fund awarded as fees often decreases[.]" *Hicks*, 2005 U.S. Dist. LEXIS, at *25. Unlike in a case with a class settlement of hundreds of millions of dollars, a 30% award of attorneys' fees here would not be a windfall to Class Counsel, particularly since Counsel will pay costs and expenses out of this portion. *Cf. EVCI Career Coll. Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *57 (recognizing that it is generally appropriate to award class counsel expenses incurred in the litigation).

Class Counsel invested over $47,140 worth of time in obtaining a fair settlement for the Class. Counsel now seeks 30% of the settlement fund, or $99,000, in attorneys' fees. This amounts to a 2.1 multiplier of the lodestar. When the lodestar is used, a multiplier is usually applied that "represents, among other factors, the risk of litigation, the complexity of the issues, the contingent nature of the engagement, and the skill of the attorney." *Taft*, 2007 U.S. Dist. LEXIS 9144, at *34. In the Second Circuit, courts routinely use lodestar multiples between 3 and 5. *Wal-Mart Stores, Inc.*, 396 F.3d at 123; *Agofonova v. Nobu Corp.*, 07 Civ. 6926, at 6 (S.D.N.Y. Feb. 6, 2009) (hearing transcript- attached as Exhibit C to Kirschenbaum Dec.) (stating that "the award of one-third the gross fund value is a 4.34 lodestar multiplier and is perfectly within the range that is acceptable"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts[.]"); *EVCI Career Coll. Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *56 n.7 ("Lodestar

---

[6] *See also, e.g., In re Bisys Sec. Litig.*, No. 04-Civ-3840, 2007 U.S. Dist. LEXIS 51087, at *10 (S.D.N.Y. July 16, 2007) (awarding fees of 30% of settlement fund ($65,870,000)); *Spann v. AOL Time Warner, Inc.*, No. 02-Civ-8283, 2005 U.S. Dist. LEXIS 10848, at *24 (S.D.N.Y. June 7, 2005) (approving attorneys' fees of 33 1/3% of settlement fund ($2.9 million) plus costs and expenses); *In re Blech Sec. Litig.*, No. 94-Civ-7696, 2002 U.S. Dist. LEXIS 23170, at *5 (S.D.N.Y. Dec. 4, 2002) (approving fees of 33 1/3% of settlement fund ($12 million) plus costs).

multipliers of nearly 5 have been deemed "common" by courts in this District."). The multiplier of 2.1 that Class Counsel seek is therefore modest.

### b. The *Goldberger* Factors

Whether the percentage or lodestar method is used, courts consider the six factors set forth by the Second Circuit in *Goldberger v. Integrated Resources, Inc.*: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." 209 F.3d at 50 (internal quotation omitted; alteration in original).

### 1) Counsel's Time And Labor

The first factor requires an examination of the time and labor expended by counsel in achieving the settlement. Class Counsel served and prepared responses to discovery requests, met with Plaintiffs repeatedly, analyzed extensive wage and payroll records to determine the extent of damages, engaged in detailed conversations with Defense Counsel about the substance and value of the case, participated in a full-day mediation, and spent hours negotiating with Defense Counsel in an attempt to reach a resolution. Kirschenbaum Decl. ¶¶ 2-5, 8. In their representation of the class, Class Counsel expended 120.7 attorney hours and 42.5 paralegal hours. *Id.* at ¶ 27. Class Counsel also have ongoing duties in administering the settlement, which will require additional professional time. Class Counsel have kept expenses and attorney hours relatively low by litigating this action in an efficient and cost effective manger. Class Counsel worked to limit the duplication of effort and assigned work to the lowest billing timekeepers (often paralegals) when possible. *See In re Global Crossing Sec. & ERISA Litig.*,

225 F.R.D. 436, 467 (S.D.N.Y. 3004) (supporting counsel's efforts to "minimize unnecessary duplication of work").

### 2)   The Litigation's Magnitude And Complexity

There is an inherent complexity in pursuing any class action.  With 124 Class Members, this class is comparable to other wage and hour class actions.  *See, e.g., Guzman v. VLM, Inc.*, No. 07 Civ. 1126, 2008 U.S. Dist. LEXIS 15821, at *15 (E.D.N.Y. March 2, 2008) (133 class members); *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *15 (46 class members).  Further, Class Members worked in several different positions, requiring Class Counsel to conduct a broad investigation into the underlying facts.

### 3)   The Risks Of Litigation

"Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Taft*, 2007 U.S. Dist. LEXIS, at *30 (internal quotation omitted); *see also In re Global Crossing*, 225 F.R.D. at 467 (noting that "[t]he contingent nature of . . . Lead Counsel's representation is a key factor in determining a reasonable award of attorneys' fees").  Class Counsel took this case pursuant to retainer agreements with the named Plaintiffs which stated that Counsel would receive one third of the recovery *only if* Plaintiffs obtained a recovery.  Had Plaintiffs not obtained a recovery, Counsel would have received no payment for their work.

Moreover, "this is not a case where plaintiffs' counsel can be cast as jackals to the government's lion, arriving on the scene after some enforcement or administrative agency has made the kill." *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y. 1992).  There was no governmental investigation of this matter. *See In re Priceline.com, Inc.*

*Sec. Litig.*, No. 00-Civ-1884, 2007 U.S. Dist. LEXIS 52538, at \*18 (D. Conn. July 19, 2007)

(noting that the absence of government prosecution increases the risk of litigation).

### 4)   Quality Of The Representation

Class Counsel have extensive experience representing workers in wage-hour class actions

and civil rights actions.  Kirschenbaum Decl. ¶¶ 11-23; *see also, e.g.*, *Delaney v. Geisha NYC,*

*LLC*, 261 F.R.D. 55 (S.D.N.Y. 2009) (conditionally certifying FLSA collective action of

restaurant workers); *Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009)

(granting final approval of settlement and certification of settlement class in wage and hour class

action); *Williams v. Twenty Ones, Inc.*, No. 07-Civ-3978, 2008 WL 2690734 (S.D.N.Y. June 30,

2008) (conditionally certifying FLSA collective action of restaurant/club workers); *Fasanelli v.*

*Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. Oct. 5, 2007) (conditionally certifying

FLSA collective action of restaurant workers).

Class Counsel used their experience to obtain an excellent result for the class.  *See In re*

*Priceline.com*, 2007 U.S. Dist. LEXIS 52538, at \*15 ("The quality of representation here is

demonstrated, in part, by the result achieved for the class.").  Indeed, no class members objected

to the attorneys' fees or any other part of the settlement, a "reaction . . . [which] is entitled to

great weight by the Court."  *Maley*, F. Supp. 2d at 374.

"The quality of opposing counsel is also important in evaluating the quality of Class

Counsel's work."  *In re Global Crossing*, 225 F.R.D. at 467 (internal quotation omitted).

Defendants are represented by Michael Volpe,[7] an experienced employment litigator and partner

in Venable's Labor and Employment Department.

### 5)   The Fee Is Reasonable In Relation To The Settlement

---

[7] *See* http://www.venable.com/michael-j-volpe/.

A fee equal to "one-third of the common fund after deduction of legal costs . . . is consistent with the norms of class litigation in this circuit." *Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *15 (wage and hour settlement).  While this percentage could constitute a "windfall" in cases involving larger settlement funds, the $330,000 fund in this case – which is less than one-third of the settlement amount – "does not create such an issue." *Taft*, 2007 U.S. Dist. LEXIS 9144, at *32 ($15.175 million settlement fund); *see also In re Greenwich Pharm. Sec. Litig.*, No. 92-Civ.-3071, 1995 U.S. Dist. LEXIS 5717, at *19 (E.D. Pa. Apr. 27, 1995) ("[A] fee award of 33 percent [of $4.3 million settlement] does not present the danger of providing plaintiffs' counsel with the windfall that would accompany a 'megafund' of, for example, $100 million.").

### 6)  Public Policy Considerations

The FLSA and New York Labor Law are remedial statutes designed to protect employees from unfair labor practices.  29 U.S.C. § 202(a); N.Y. Lab. Law § 650.  A fair attorneys' fee award that takes into account the services provided and the risks undertaken furthers these remedial purposes.  *Maley*, 186 F. Supp. 2d at 374; *cf. Hicks*, 2005 U.S. Dist. LEXIS 24890, at *26.  Moreover, given the relatively small recoveries of individual class members, it is unlikely that "without the benefit of class representation[] they would be willing to incur the financial costs and hardships of separate litigations." *Frank*, 228 F.R.D. at 181.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask that the Court (1) grant final approval of the class action settlement; (2) certify the settlement class; (3) award Class Counsel attorneys' fees; and (4) approve the enhancement and incentive awards requested.

Respectfully submitted,

Dated: New York, New York          JOSEPH, HERZFELD, HESTER &
       April 19, 2010              KIRSCHENBAUM

                                   /s/ D. Maimon Kirschenbaum_____
                                   D. Maimon Kirschenbaum
                                   Denise A. Schulman
                                   757 Third Avenue, 25th Floor
                                   New York, NY 10017
                                   Tel: (212) 688-5640
                                   Fax: (212) 688-2548

                                   *Attorneys for Settlement Class*

26